Council, you may proceed. Thank you, Your Honor. Could I ask the Court to indulge me with six minutes of rebuttal as we have an appeal and a cross-appeal? In other words? For more than 20 minutes, just to reserve six. How would that work, in your view? I would do it 14 minutes now. All right. And then? Six minutes would reserve for rebuttal. Then we'll leave the cross-appeal until later? Is that what you're suggesting? Well, I guess that's correct. Unless you – I'd be happy to indulge any of your questions now. I'm just suggesting I'd like to see if you could do that. I think it's easier just to take both as you go along. Okay. Thank you, Your Honor. And if there's any balance needed, we'll handle that separately. Okay. Thank you, Your Honor. I want to emphasize at the outset of my argument that the appellant here is not proposing that the insurance company shouldn't have a full opportunity to present evidence, whether it be by way of a trial where the burden is on the carrier or whether it be to the court where there's an equitable allocation. We're suggesting they should have an opportunity to determine whether a settlement and the components of a settlement are covered or uncovered. What we're suggesting is the Court take into consideration the real world of what happens to insurance when they get sued. And sometimes I think as lawyers we lose perspective as to how significant it is to a small business owner or an individual when they're sued. And their insurance company abandons them, and the practical position they're in, where it makes it fair for the insurance company to have the burden of coming forward with the evidence to show what's not covered, since we know there was a duty to defend and assumedly there was some potential for coverage, or the carrier should have or the insured should have a right to have the court look at all the facts and circumstances. So your argument would be that under California law, once the insured wrongfully refuses, or the insurer wrongfully refuses the tender, that this is part of the consequences of its wrongful refusal. It now has to shoulder the burden of the allocation. It is, Your Honor. I want to emphasize that, you know, we're also not suggesting the rule that indemnity is automatic because of a failure to defend. We're suggesting there be a process, but it is a natural consequence of them failing to defend because of the impact on the insured. You know, there's hundreds of mediations going on right now within a few blocks of here. In some of those mediation rooms, there are insureds who've been denied a defense. In some of those mediation rooms, undoubtedly that defense may have been wrongfully denied. And that insured sitting there, let's say it's an accountant who's being sued for millions of dollars by one of his clients. He's scared to death because he doesn't have an insurance company behind him. Some part of it might be covered and some not. And he's sitting there having to say, you know, for goodness sakes, I'm so happy they'll take $100,000, Mr. Lawyer. I should settle this for $100,000. Right now, we haven't done any discovery, and you've told me it's going to take $100,000 to defend this case. So, Your Honor, what you would ask for us to do is to order a reband so that the allocation of the settlement should be determined in the first instance by the district court? That's correct, Your Honor. And that is the standard be that the burden is upon the opposing counsel to come forward and demonstrate the evidence that would have been generated had they defended the case. They would have hired accountants and done all the things that the defense counsel does when they're defending the case. Or the court can take into consideration all of these issues, and without the burden being on the insured is the main thing, and make an equitable allocation. That's correct. Is it your contention that the entire amount would fit within that burden? It is, Your Honor. Certainly, if the court finds that the appropriate rule is that the burden is upon the insurer, because the insurer didn't refute or put on any evidence that there was some component of this that was not covered, there was no allocation done by the insurer in the underlying case. So on remand, if the court would conclude that the what I think the appropriate rule is that the burden should be on the insurer since they had control. Would that include the $8 million or $4 million, I forget what the number is, in inventory that Peterson is still carrying? It would not, Your Honor, because that would be an extra contractual damage that would have been claimed at a bad faith case, and we are not appealing. Because it struck me that one of the things that happened, and I don't, in my question, I'm not faulting your client for doing it, but he did what you suggested the accountant did. He went to the, I assume, the principal for, was it Kelly? Was that the other company? Yes. They basically sat down and said, look, what's it going to take to resolve this? Okay, I'll give you 5% of my, you know, sales, whatever, and I'll agree to buy so many tractors, et cetera, et cetera. And the question is whether or not the insurance company has to pay all or part of whatever the financial outlay would be for that, the terms of that settlement. Correct. And we're not asking in the underlying matter for the other negative repercussions that came about because of the settlement, only that was primary evidence to show that there was a significant component of the settlement that was, what they paid, we could allocate that, all of that to non-covered items. That was the point. There was money that was paid, and then there was other repercussions that could be allocated to non-covered claims because of the total economic impact that the Court could sit and reflect on and say, well, I see. They had all these bad things that happened to them because of the settlement. They had to write a check. They had to have all this inventory. They'd lost a bunch of money. Say, well, I'm going to allocate all of the uncovered claims to the fact they have this inventory sitting there, and I'm going to say it's fair and reasonable for them to get $351,000 back. That's what I'm saying, because it's the Court should be able to consider all of those factors. So $351,000 include attorney's fees or plus attorney's fees? It was 300. That's on the indemnity side, Your Honor. The attorney's fees was the amount the Court, we stipulated, to actually try, which was 68 with interest. It was 81. Okay. And I think that's specifically stipulated in the record, Your Honor. I wanted to emphasize this hypothetical I was dealing with the accountant, because this issue with regard to allocation really is a real thing that causes this problem to insurance. So we have the accountant saying to his lawyer, I want to settle for 100 dollars. He says, you can't do that, because we haven't done any discovery. See, we have to go get evidence, because I know this is your kid's education fund you're paying, and you want to get that 100 back from the insurance company. I think they're wrong. But we have to go do discovery and figure out the multimillion-dollar plaintiff, what part of that would be covered and what part would be uncovered in the accounts. Well, we can't do that. That will infuriate him. They want to settle it today, and I'm ready to pay. So I've got to pay a part of my $100,000 to not to settle a case, but to do discovery, and maybe I won't be able to settle it for $100,000? Well, then he says, okay, let's go ahead and pay the 100, but we'll ask him to allocate it in the settlement document that will hopefully satisfy the care rule. We'll ask him. So the mediator goes into the multimillion-dollar plaintiff and says, they want to allocate the settlement, 50-50, to these particular components of claims, because they have some insurance coverage issues. And the plaintiff says, insurance coverage issues? Well, wait. If they have insurance, I'm not going to demand 100 now. I want more than 100. Or if they may get insurance back, not only do I not want to do that, I don't want to settle it at all, because I didn't think about the fact they have insurance. Or I want – if they're going to sue the insurance company, I want them to pay the 100, and I want part of that money back. So you can see the defendant, who is in the position of having to take into consideration the insurance issues that they will be facing after the settlement process is over, actually is in a prejudicial position. Well, most plaintiffs would be sufficiently savvy to know there might be some insurance coverage, but that the insurance company had not appeared yet. So, you know, I understand the real world of mediation. You know, you're right in many cases. I'm an insurance coverage lawyer who also does about 50 or 60 mediations a year. And we have – you know, as we sit here now, each one of us probably has six or seven different kinds of liability policies that cover us in different ways. Companies defending a reservation of rights, you know, when you settle a case, generally the savvy plaintiff's attorney will know there may or may not be coverage that's disputed and takes that into consideration. I understand your practice. Depends on the case. I think we understand the realities of mediation, too. Well, and the realities of the different kinds of policies. You may have a homeowner's policy where they refuse coverage because they think it's all damage to the insurance property because it's a landslide. The plaintiff attorney is not sophisticated in insurance coverage. He does property stuff. And I'm actually very frequently retained by plaintiff attorneys because the defendants are referred to coverage counsel. The plaintiff is being told, you should take a lot less for this case because there's no insurance coverage. And they're retaining me to say, is that right? Should we take a lot less money because there's no coverage for this? And many times, I think you're obviously right, Your Honor, sophisticated plaintiff lawyers are going to recognize there may be an issue with regard to insurance. But the point is the defendant who's in a position where they're not being defended and this could happen in so many different contexts and the millions of different kinds of liability policies we have, it's hard to bring all of them into the courtroom. But you can imagine the insured who has a plaintiff lawyer on the side who may never have contemplated anything with regard to insurance. As a matter of fact, may think the insurance company is right with regard to the denial of coverage they learned the defendant had. And the defendant is saying, you know, I really think I have a right to get my money back. And that does happen. Alitoson Mr. Benning, now that we're on to the practical logistics of resolving this thing, if we remand it and we send it back for proceedings in the district court to allocate, isn't a substantial amount of evidence in your client's possession that would need to be known in order to assist the court in making that allocation? And why isn't it more fair to put the burden on the insured with regard to the allocation for that reason? Benning It's a good question, Your Honor, but it is not in our client's possession. And the reason it's not is because they didn't provide us with a defense. It's in Kelly's possession. It's in the plaintiff's possession. As to what you're asking, I'm trying to look at this through the eyes of the district judge that's going to have to preside over this hearing. There isn't any discovery at this point. And, you know, how can we efficiently manage what I'll call the allocation hearing when Kelly's not there and the insurance company didn't participate? So the only party that participated in the settlement discussion is Peterson. So Peterson's in the best position to know what components went into the settlement. Roberts. I think the issue is, for one thing, we have two different standards we propose. One is the burden is on the carrier. One is that there can be an equitable allocation. The information really isn't in our client's position. That's the whole point. This is the – if the duty to defend is not breached and the carrier is in control and is providing counsel, you can say, we're going to go forward and defend and hire the accountants and do all the things to ask Kelly, because that's really what you have to do. Kelly, how much of this is because of loss of profits or because of thing – income you're saying we took from you because we bought stuff wrongfully. We can allocate it among all those things. That's in Kelly's position. That's not ours. So that's the whole point. If you're being defended, just like the insurer who's sitting down at the courthouse now having a company defend them under reservation of rights, they get a verdict. And they have had all the discovery done. And they know exactly what the damages are. And they can compartmentalize them into different components. Well, would it – let me ask a more practical question. Would it be your position that there wouldn't be any reason why the district court could not issue appropriate discovery orders, Rule 17 subpoenas, whatever it might be, in order to get the necessary evidence in aid of the allocation here? I think they could, Your Honor. As a matter of fact, the insurance company and any of these – they chose not to But any time there is an allocation issue with a settlement, whether it's an equitable allocation or the burden is on it, they can then do that discovery. They can choose to go to the plaintiff in the underlying case and take depositions and find out what the basis of their claims were and what the economic justification was for whatever the value was. And there's an ability for the carrier to now do and have the exact same kind of discovery that they would pay for now in the coverage case that they would have paid for in the underlying matter where they wrongfully failed to defend. So, Franny, maybe this is a good time for you to take a recess and – well, not a recess, but stop at the moment and hear from the other side, and then you can cover the coverage issue and anything else that comes up. Thank you, Your Honor. Thank you. So, Your Honor, am I then to address only the appeal and not the cross-appeals? All issues. All issues. All issues. Okay. Thank you, Your Honor. Counsel agreed that his position was that under California law, part of the consequences of a failure to defend would be to shift the burden to the insurer to show how much of the settlement is for covered damages. But California law has, in fact, addressed this issue and is to the contrary. The Prime case talked on page 514 about the fact that when there's a settlement, the coverage issues remain open and the insurer can assert any defenses to coverage that it would have. It is not bound by any underlying judgment or the underlying settlement and can assert any defenses to coverage. On the very next page, the same court talked about the effect of a settlement and the presumptions that gives rise to and mentioned that there were two presumptions. One was a presumption that the settlement was reasonable, and the other was a presumption that the insured was liable in the amount of the settlement. There's no presumption as to coverage that's created. And so we simply fall back to the standard rule under California, and I believe most, if not all States' law, that the party seeking relief has the burden of proof, and in a breach of contract action, which is what this is, the party seeking indemnity has the burden to establish not only the breach, but also their damages. And in order to establish damages from the breach of duty to defend, or in this case, the breach of duty to indemnify, the plaintiff has the burden to show how much of what they paid in settlement was covered under the policy and therefore subject to indemnity. Well, now, what specifically did Judge White do with respect to the settlement or Armstrong, excuse me, Judge Armstrong do with respect to the settlement? What Judge Armstrong did with respect to the settlement was she found as a factual matter that she could not make any allocation. She pointed out that the parties never discussed any allocation at the time of the settlement, that Peterson in its internal analysis of it had not come to any conclusion as allocating between infringement of a logo versus defamation versus holding itself out as an IMT dealer, and so that there was no way to do an allocation. That's what bothers me. It seems to me that the indemnity is not zero. It's something more than zero. It may not be the full 300 whatever thousand it was, but it's certainly not zero. That's exactly the case in the Golden Eagle case as well. The Golden Eagle case, the California court of appeal, the only difference in that case and this one is that it's a judgment rather than a settlement. For the reasons we've discussed in our briefs, that doesn't change anything. In the Golden Eagle case of the Golden Eagle case of the Golden Eagle case, it was not a duty-to-defend case, though. And it was not a duty-to-defend case, but as we've discussed, and I just pointed out in prime, the breach of the duty-to-defend does not give rise to any presumptions regarding coverage. The breach of the duty-to-defend, if the carrier then goes on and settles, gives rise to other presumptions, but not as to coverage. But I think, just to follow up on Judge O'Scanlan's point, because it bothers me as well, the rule cannot be that if one has difficulty allocating, that the plaintiff gets nothing, if there are commingled issues that are covered and not covered. If at the time of the settlement, Peterson's attorney testified here and said that they thought that, in general, the various causes of action, 4, 5, and 6, were significant causes of action, if he had done an analysis to say, I think cause of action 4 presents more risk of liability than 5, you know, had broken it down in some way, then we would have some basis for an allocation. Right, but you could even get that now, I mean, which is, you can, you may not be able to do a precise allocation because settlement mediation is a fluid process. People agree on numbers, sometimes arbitrarily, I mean, you can't allocate. And we're not saying it has to be a precise allocation. Judge Armstrong found, as a factual matter, that she was not able to do any allocation at all. Right. You seem, not to interrupt, but you seem to be arguing for the rule that if it's difficult or impossible to allocate, plaintiff gets nothing. If it's impossible to allocate, plaintiff gets nothing. That's what Golden Eagle says. That's California law. I don't think that's what Golden Eagle, Golden Eagle isn't a duty to defend case, though. I just, I think that's a pretty profound difference. Because you have a breach of contract here already, you have a breach of the duty to defend. Presumably, the duty to defend, of course, is broader than the duty to indemnify. But the duty to defend is triggered because there is some coverage afforded on the basis of the complaint. Potentially. And then you settle. Yes, potentially. But that's what, so they're through the door on the duty to defend finding a breach of contract because there's arguably, there's enough coverage, enough covered events alleged to trigger a duty to defend. Stage one. Stage one. So stage two, they settle the case the next day. Then it seems to me you have to undertake the task of, A, finding out where there's true coverage. But, B, if there is coverage, then you've got to allocate the settlement. Yes. Who bears the burden is a separate question. But I think if you say a rule that if there's a covered, if the judgment is covered, let's take that as a hypothetical. If the judgment is covered, that's part of it. Yes. That it's unquestionably covered. The rule cannot be the plaintiff gets nothing. Well, in Golden Eagle, it was undisputed that at least part of the damage was caused by sudden and accidental events, which would be covered. Right. But because the plaintiff could not divide out what the damages were from those sudden and accidental events, there was no duty to indemnify. They could not establish their damages. Now, the fact that there was a breach of duty to defend, if we assume there was. Obviously, I dispute that as well. We'll get to that later. The fact that there's a breach of a duty to defend does not give rise to any presumption as to whether the settlement is covered. That's been addressed in the Hogan case and in the Define case. Even if we accept that as a proposition, as I understand the record here, your adjuster conducted no investigation of the claim before rejecting the tender, right? The only investigation that has to be done in duty to defend is to review the complaint and the policy. Now, if additional information is provided, they have to consider that. So the answer is correct. We didn't do any factual investigation. Well, we just made a legal determination that we thought we weren't on the hook. That's right. All right. And if that's the case, and it subsequently determined that that refusal of the tender was wrongful and that the – that your client should have defended Peterson, why should the insurer benefit by having Peterson shoulder the responsibility for allocating between the covered and the uncovered claim? The insurer is not benefiting from the fact that it denied defense. If the insurer had been defending and the case had gone through and a settlement proposal had been made and accepted, we'd still be in the same situation. Peterson would still have the burden of showing how much of it was covered versus uncovered. The fact that they weren't being defended by travelers doesn't make any difference. I mean, they were being defended by competent counsel. There's no argument that the settlement came about because they couldn't defend themselves. But that may not always be the case. I mean, we may have situations where the insured can't afford to hire competent counsel, in which case we've got a real problem. In the Amato case, where there was a default judgment, the Court held that the judgment can be considered a consequence of the duty to defend. In that case, there was also a finding that it was a bad-faith refusal to defend. Both of those factors are not here. And I suppose if you have a case where they hire incompetent counsel and don't have a default, maybe that gets into a little less of a clear-cut area. But the fact is, in this case, and in, I think, the typical case here, where they're being defended, unless you can show that there's something seriously wrong with the attorney that's defending the case, which I certainly don't assure here. Please don't tell me we're going to have to start getting into ineffective assistance of counsel. Well, I just don't think that's an issue that's going to come up. I think where they're being defended. We'll see better at night. But analytically, when you carry this out, let's assume there's a full trial on this and a general verdict on all counts. General verdict, general damages. You're in the same boat on allocation. Correct. I mean, it's no different from this, a default judgment. If the plaintiff says, look, we're just going to lay down on this thing. We can't pay. We're going bankrupt. You can get something from the insurance company if you want. Or on a settlement. I mean, those happen every single day. And it is possible to allocate, isn't it? Yes, it is. It is often possible to allocate. In many cases, it's impossible to allocate. I don't see why it's impossible to allocate this case. You'd have to ask Judge Armstrong. I mean, I can tell you why I think it was impossible to allocate. She found, as a matter of fact, after a trial, that she could not allocate. She didn't tell them they don't get to try to allocate. They don't get to present evidence of allocation. She said, come on in. Bring all your evidence of allocation in here. Tell us what you considered at the time. Tell us what you talked about with Kelly. Tell us how you analyzed it. Tell us what information you had about the damages. Give us all the evidence you have about allocation. She looked at all that evidence, and she concluded there's simply no way to come up with any number that makes any sense for this. And, in fact, she pointed out that the evidence shows that Peterson did not have any evidence at all that Kelly had, in fact, lost any sales whatsoever. Kelly said they lost sales, but they never gave any evidence of it. So to allocate the ---- Well, that's a chicken and egg problem. They settled the case before they spent the money conducting the discovery. Well, I've certainly gone to a number of settlements, and I'm sure you're familiar with this as well. You're not getting into discovery, but you just say to the plaintiff, just show us what your damages are. Give us your damages evidence, and then we'll go in and mediate with you and try to reach a settlement. To go in and settle without any damage is evidence. The more common way of allocating in the absence of any discovery is not to go out and do a bunch of discovery. It's to turn to the pleadings and say, well, what part of the case is this? I mean, you can allocate in a rough way by that. That's the common way. You don't have a ---- Often courts don't engage in a secondary trial on what you could have proved later if you have a settlement. You allocate it based on the pleadings. And if the pleadings have alleged an injury that's covered, yeah. Well, I'm not familiar with any authority that suggests that an allocation of a settlement or a judgment can be done just based on the pleadings. The courts look at the actual evidence. Well, I'm talking about it as a practical matter. That's what happens in many cases. I'm sorry? I mean, it may not get appealed, but that's what happens in a number of cases. The fact is what we're looking at here is California law. And California law says ---- I'm talking about what happens in the mediations in California and how people work things out. That's what happens. They may in fact work it out that way in mediations. People work things out in all kinds of different ways in mediations. But that doesn't guide what the law has to be for the burden of proof going to trial. Right. What you're really saying is if a defendant goes in and says, look, I want to settle this, I want to get it behind me, I'm going to pay $100,000, and I don't want to go to the expense of discovery, that that defendant is basically then waiving any claim to insurance coverage because he, the defendant, he or she or it may ---- doesn't know. A, the defendant can ask the plaintiff to just give them some evidence of damages, which there was no evidence here. B, they will presumably have done their own internal analysis to show what their risks are on the case and why it makes worth settling. And that internal analysis can be used to allocate what was in their mind at the time of the settlement. Here, Peterson's attorney didn't do any written analysis. He came, you know, a couple of years after the fact and said, you know, I thought those causes of action in general were of significant concern. That's all he said. That's just not enough to do an allocation. There's no reason to shift the burden to Travelers to do that when Peterson is coming forward saying, we have no evidence whatsoever. Sorry, Travelers, I guess you won't at all. And that's basically the position they're taking. You're down about seven minutes. You may want to cover the coverage issue at this point. Yes. The Court found ---- I don't want to cut you off. It's just that ---- No. I agree, Your Honor. I would like to get to that. We covered that issue pretty thoroughly, I think. The district court found that infringement of title was alleged here because there was an allegation that Peterson had been using IMT's logo in its advertisements. Now, the Court's job in determining whether infringement of title was alleged in this case is to predict how the California Supreme Court would resolve this issue. We've cited and discussed at length the California Supreme Court case of Palmer, which did involve different language but came to the conclusion that infringement of title refers to infringement of the title of a literary or artistic work and does not refer to infringement of a trade name. Now, that was based on the fact that there was an exclusion for infringement of a trade name that came into play. But the Court distinguished ---- but what we're needing to do here is predict what they would do if they were faced with the question presented here, a policy that doesn't have that. They chose not to address that, but they did say they distinguished the touch-of-class case from New York because the Court in that case failed to consider the policy language as a whole. And if you look at the policy language as a whole here and give the plain and ordinary meaning to the word title in the context it's used, it's not the same thing as saying name. Name is a broader word than title. Name refers to the designation by which anything is known. In common usage, title is used to refer to the title of a book, the title of a movie, the title of a song. It's not used to refer to the title of a company, the title of a product. It's just simply not the way that ordinary people use the word title in common language, and that's the standard to be applied. The fact that the drafters chose to use the word title and not the word name must be given some meaning. The only way to give meaning to that is to give title its common ordinary meaning of referring to the title of a book, a play, a movie, literary or artistic work. To say that it can refer to any name, including a business name, is really just a lawyer's argument based on finding a dictionary definition that's broad enough to include what they're looking for and then inserting it into the policy without regard to the context or how it's used. The Palmer Court also recognized that the title of a copyrighted work cannot itself be copyrighted, and they therefore concluded that it made sense that when you have infringement of copyright title or slogan as the covered offense, that the word title there would refer to the title of a copyrighted work. By looking to the terms around the word title, they are able to give meaning to the word title itself. And indeed, they cited the Code of Federal Regulations, which refers to names, titles and slogans as being items that are too short to qualify for copyright protection, thus distinguishing between names and titles. To say then that the word title is used in the policy somehow is broad enough to encompass both names and titles really, I think, is taking it out of context and distorting the meaning of it. With respect to the other argument that Peterson has made, defamation, disparagement, they rely on the label of the argument instead of looking at the facts. California law is clear. You look at the facts that are alleged in order to determine what is being alleged, whether it's a covered offense. Peterson cannot cite any authority that the label determines coverage that is directly contrary to California law. And there's a good reason for that. That would make the third party the arbiter of coverage, which is rejected by California law. The third party can allege all of the facts that they have to allege without getting into any false allegations or anything, and then just stick a title on that would create coverage, and in that manner create coverage for a claim that really should not be covered. I'm not suggesting that Kelly intentionally did that here. I don't know whether they did or not. But the fact is, to determine the duty to defend in California, if you look at the facts that are alleged, and looking at the facts here, there was no allegation of any statement that was derogatory of Kelly in any way. The only statement that was referred to was that Peterson was holding itself out as an authorized IMT dealer or even as the exclusive IMT dealer for a particular area. And that doesn't say anything about Kelly. It doesn't purport to say anything about Kelly. I mean, the policy does not say that it covers any cause of action labeled defamation. It says that it applies to injury caused by publication of material that libels or slanders or disparages. Here there was no allegation of any material that was published that libeled or slandered or disparaged Kelly. Peterson has argued that we're saying this is a meritless claim, and if it's a meritless claim we should be defending it. We're not saying it's a meritless claim. There very well could have been merit to the claim under an unfair competition theory. That doesn't convert it into the publication of material that slanders or libels or disparages. So for those reasons, we think there's no duty to defend in the first place, and the entire judgment should be reversed and judgment entered in favor of travelers. I have a minute and a half left. I'd like to get back to the allocation issue. There was a lot of argument in Peterson's papers about the difficult situation that an insured will find itself in trying to settle, and a lot of it boiled down to they won't know how to manipulate the coverage and the allocation in order to set it up for coverage if they don't know what the covered items are beforehand. That's not what they should be doing. They should be honestly approaching it. No, but the practical consequence if we were to hold or the California Courts were to hold that you had to allocate at settlement is that probably manipulation would occur at settlement to shift more of the money to the covered claims or allegedly covered claims. That's the practical consequence of saying you have to allocate at settlement as opposed to saying let's allocate later based on a true and just examination of what's really covered or not. I mean, that's the real problem. And they can allocate later based on a true or just examination as well if there is evidence to support it. And the Court didn't say they can't do that. The only question is who has the burden for that. But doesn't Mr. Benning's argument that settlements would probably tend to go higher if it becomes obvious that the parties are trying to allocate because of insurance coverage? Well, if they go in and make it clear they're not being defended by an insurer and the insurer is not participating, I don't see why that would make it go higher. In fact, they probably want to let the other side know we don't have any insurer defending us here. It's just us. So, you know, we're not going to be able to go any higher than this small amount. And by the way, we need to allocate because we're going to litigate coverage? Perhaps. Or they could. I'm not saying they have to go and talk about allocation. That's something that can be used to show an allocation. They can also show their internal evaluation of it. And when they showed that here, the Court concluded it was not sufficient to carry a burden of showing really even an estimate of how much it was because they didn't have any evidence of damages at all. Thank you, counsel. Your time has expired. Thank you. Mr. Benning has some reserve time. You know, I want to be sure that the record is clear with regard to what Judge Armstrong did. What she found was because the burden was on the insured and the insured's lawyer honestly said, hey, look, you know, when I was settling this case, I didn't sit down with Precision and say $50,000 is for this cause of action and $40,000 because that's what that wasn't what I was doing. I was recommending I could see causes of action that were a problem and clearly represented exposure. I knew that there was a whole bunch of defense costs that were going to be incurred, and that's what we did in settling the case. I didn't do something with Precision. She said because there was not some allocation made at the time of the settlement, which, of course, their focusing was all particularly insureds that are not being attended to the litigation as opposed to thinking about insurance coverage, he didn't do an allocation. But had the burden been upon the carrier, I mean, I'm assuming that the award would have been fully in our favor because, indeed, they would not have been able to show that there was some component of the claim that wasn't allocated. And I think the Court's point is good that some part of this is covered. And so if the burden would have been on the carrier, the the I would propose that the judgment would have been exactly reversed, or if the judge would have imposed a standard that she was going to make an equitable allocation, she could have looked at all the factors that the lawyer talked about, the risks that were attended to each cause of action, which he thought were meritorious and which weren't, which facts were compelling with regard to the liability and which weren't, the fact that they were trying to avoid a significant amount of attorney's fees in the future and make an equitable determination in allocating what the outcome would be. But it's not that there was no evidence that would have allowed the Court to come to a different conclusion. It had to do with the burden of proof and the fact that Judge Armstrong did not choose, then, to use an equitable allocation approach. She chose to put the burden upon the insurer only. You know, as far as giving a logical extension as to what California law is and the case law that is directly in front of the Court, the Prynn case, and counsel makes a good point, that the burden is upon a party seeking indemnity to prove all the conditions of indemnity. And normally, of course, the indemnity obligation is not triggered until you actually have liability and you actually have damages. But the Prynn case said, ah, we're going to find that there's a presumption of actual liability and actual damage, presumptively, because of the issue that you failed to defend. The thing they didn't have in Prynn was an allocation issue. There was nothing in Prynn. Nobody was claiming that some part of it was going to be uncovered and some part of it would be covered. So the question would be, wouldn't the Prynn court naturally have the exact same extension on the presumptions and say, well, we know that some part of this was covered and some part of it isn't? We've decided for these two conditions of indemnity, liability and damages, we're going to give a presumption that these two conditions of indemnity, that's your burden to prove, Mr. Indemnity, that you're the person seeking indemnity has to prove. You have to prove that, but we're going to presume that you did that because it's settled. We're going to presume you had liability. We're not going to let them come in and say, you really never should have paid that because the auto accident wasn't your fault. We're not going to let them do that. We're going to presume you had liability, and we're going to presume that these damages were fair and reasonable. An actual extension of that is when you have a case, which they didn't have in Prynn, where they're saying some component would be covered and some wouldn't be covered, but that's also a presumption that the damages that were paid were covered. Then the carrier can come in and demonstrate. They can do discovery. They can evaluate what the plaintiff was claiming in the underlying matter, just like they could have done if they were defending the case, and come in and demonstrate to the court, pursuant to their burden of proof, what components of the claim was not covered. So this isn't depriving the carrier of a real and adequate opportunity to come forward with evidence as to what is covered and what isn't covered. With regard to the issue of the duty to defend at the outset, you know, I don't – if an advertising injury claim can't be premised upon taking somebody else's logo that they claim they have an exclusive right to use and advertising it in a manner that is wrongful, I'm not sure what an advertising injury or an advertising injury claim could possibly be. But what about the title issue? Well, of course, the case they're relying on is so distinctly different because they had a specific provision in that policy that – that identified that the kind of trademark that they were asserting a title to was excluded, which, of course, is not in this case. And I think the briefs actually really thoroughly identified the term title is broad. It's not defined in the policy. In this instance, Kelly had a license to exclusively use this IMT logo. It was their exclusive property right to use it in this country. And the cases are very clear. Title doesn't have to mean like you're holding a deed in your hand. It can be that you have a property right and they had a right to use this IMT logo exclusively. And my client mistakenly used that logo during a period of time that they thought they had a right to when they didn't. And, in fact, it was Kelly's exclusive property right. Your Honor, the Golden Eagle case that was cited is a case where, number one, the Court's right, it's not a duty-to-defend case, but even more compellingly, it was a case where everything – the world of everything was excluded, and then there was an exception to the exclusion, where, as opposed to this case, we know some component of this was covered. Everything was excluded, and they failed to demonstrate any component of that exception to the exclusion that applied. So the world of things were not covered, and they failed to show that something came within an exception to the exclusion, which is distinctly different than this case. Your Honor, I have nothing further, and I will submit it. Thank you, counsel. The case just argued will be submitted for decision, and the Court thanks counsel for a very fine argument on both sides. The Court will adjourn. Thank you.
judges: O'scannlain, Thomas, Tallman